IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RONNIE V. WILLIAMS, #239426,  )
a.k.a., Ronald Vincent Williams,[1]  )
)
Plaintiff,  )
)
v.  )   CASE NO. 2:17-CV-146-ALB
)          (WO)
)
CORIZON HEALTH CARE, et al.,[2]  )
)
Defendants.  )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[3]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Ronnie V. Williams, an indigent state inmate and frequent federal litigant, for alleged constitutional violations which occurred during a prior term of incarceration at the Easterling Correctional Facility.  Williams names Corizon, the former contract medical care provider for the Alabama Department of Corrections, Dr. Jean Darbouze, Nurse Kay Wilson and

---

[1]In the numerous civil actions filed by the plaintiff with this court, he interchangeably identifies himself as Ronnie V. Williams, Ronald Vincent Williams and Ronnie Williams — AIS No. 239426.

[2]Corizon Health Care is now known as Corizon, LLC.  For purposes of this Recommendation and in the interest of clarity, the court will simply refer to this defendant as Corizon.

[3]All document numbers and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

Nurse Mona Payne, employees of Corizon assigned to Easterling at the time relevant to the complaint, and Walter Myers, the warden of Easterling at such time.[4]

In the instant complaint, Williams challenges the medical treatment provided to him for an infection on his private part and blood in his stools.  Doc. 1 at 2–3; Doc. 2 at 2–3. Williams also contends that the medical defendants relied on false information, i.e., the medical history of another inmate named Ronnie Williams who suffers from mental illness, when treating his scrotal infection and blood in his stools.  Doc. 1 at 2; Doc. 2 at 1.  Next, Williams complains that defendant Myers failed to intervene in his medical treatment in retaliation for his filing previous civil actions.  Doc. 2 at 3.  Finally, Williams simply asserts he has "rights to Equal Protection of Law."  Doc. 2 at 1.  Williams seeks a declaratory judgment, injunctive relief and monetary damages for the alleged violations of his constitutional rights.  Doc. 1 at 4.

The defendants filed special reports, supplemental special reports and relevant evidentiary materials in support of their reports, including affidavits and certified copies of pertinent medical records, addressing the claims raised in the complaint.   In these documents, the medical defendants adamantly deny they acted in violation of Williams' constitutional rights in providing medical treatment to him for the scrotal infection and blood in his stools.  Specifically, these defendants maintain they did not act with deliberate indifference to Williams' medical needs.  The medical defendants also maintain that they

---

[4]Dr. Darbouze served as the facility's Medical Director, Nurse Wilson acted as the Health Services Administrator whereas Nurse Payne served as the Director of Nursing.

did not rely on any false information in Williams' medical records when providing treatment to Williams for the conditions made the basis of this complaint.  The relevant medical records support this assertion as these records demonstrate that Williams received treatment from medical personnel based on his specific description regarding the condition from which he suffered.  In addition, defendant Myers maintains he did not act with deliberate indifference to Williams' medical needs or take any action in retaliation for his filing previous lawsuits.

After reviewing the initial special reports filed by the defendants, the court issued an order on April 6, 2017 directing Williams to file a response to each of the arguments set forth by the defendants in their reports and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials.  Doc. 15 at 2.  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report[s] and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. 15 at 3.  Williams filed a sworn response to this order on April 10, 2017.  Doc. 17.  After receipt of the supplemental special reports from the medial defendants, the court provided Williams an opportunity to "file any additional response he deems necessary to the

supplemental special reports" and advised him that in doing so he "should comply with the directives of the order entered on April 5, 2017 (Doc. 15)[.]"  Williams filed an additional response on June 27, 2019 referencing medical treatment provided to him far removed from the treatment made the basis of the instant complaint.  Doc. 46.

Pursuant to the directives of the above described orders, the court now treats the defendants' special reports and supplements to these reports as motions for summary judgment.  Upon consideration of the defendants' motions for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and responses filed by Williams, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence

of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving

party has initial burden of showing there is no genuine dispute of material fact for trial).

The movant may meet this burden by presenting evidence indicating there is no dispute of

material fact or by showing that the nonmoving party has failed to present appropriate

evidence in support of some element of its case on which it bears the ultimate burden of

proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir.

2011) (holding that moving party discharges his burden by showing the record lacks

evidence to support the nonmoving party's case or the nonmoving party would be unable

to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the

burden shifts to the plaintiff to establish, with appropriate evidence, that a genuine dispute

material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.

1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly

support an assertion of fact or fails to properly address another party's assertion of fact [by

citing to materials in the record including affidavits, relevant documents or other

materials], the court may . . . grant summary judgment if the motion and supporting

materials—including the facts considered undisputed—show that the movant is entitled to

it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the

non-moving party must then go beyond the pleadings, and by its own affidavits [or

statements made under penalty of perjury], or by depositions, answers to interrogatories,

and admissions on file," demonstrate that there is a genuine dispute of material fact).  In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of

evidence supporting the opposing party's position will not suffice, there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . .

. . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Chamption Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories,

one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Williams has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III. DISCUSSION[5]

### A. Absolute Immunity — Correctional Defendant

To the extent Williams lodges claims against Warden Myers in his official capacity and seeks monetary damages, this defendant is entitled to absolute immunity. Official

---

[5] The court limits its review to the allegations set forth in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint). The claims raised in the instant complaint relate to medical treatment provided to Williams for a scrotal abscess and bloody stools from September of 2016 until March of 2017. The court allowed no amendments to this complaint. However, on June 5, 2017, the court opened a separate case, *Williams v. Corizon Health Care, et al.*, Case No. 2:17-CV-366-ALB-SMD, in which Williams challenges the adequacy of medical treatment provided to him for blood in his stools from May 5, 2017 until filing the subsequent case in June of 2017.

capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

> "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]." *Alabama v. Pugh*, 438 U.S. 781, 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).  There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 131 S.Ct. 1632, 1637–38, 179 L.Ed.2d 675 (2011). "A State's consent to suit must be 'unequivocally expressed' in the text of [a] relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). "Waiver may not be implied." *Id.*  Likewise, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)).

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015).  Thus, a state official may not be sued in his official capacity for damages unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.  *Pugh,* 438 U.S. at 782, 98 S.Ct. 3057 (citing Ala. Const. art. I, § 14.)

*Selensky*, 619 F. App'x at 849.  "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.

1990)).  In light of the foregoing, defendant Myers is entitled to sovereign immunity under the Eleventh Amendment from the request for monetary damages from him in his official capacity.  *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

## B.  Deliberate Indifference to Medical Needs

Williams alleges that the medical defendants acted with deliberate indifference to a scrotal infection and the presence of blood in his stools.[6] Williams also argues that the correctional defendant, as warden, should have intervened in the treatment decisions of the health care professionals to ensure that he receive appropriate medical treatment. These assertions entitle Williams to no relief.

### 1.  <u>Standard of Review</u>.

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).  Neither medical nor prison personnel may subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate

---

[6]Williams, an inmate with no medical training, makes the conclusory allegation that a bleeding colon caused the blood in his stools during the time relevant to the complaint.

indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").

Under well settled law, neither medical malpractice or negligence equate to deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking

relief based on deliberate indifference, an inmate is required to show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts."  *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk of harm to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendant] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law."  *Taylor*, 221 F.3d at 1258 (internal citations omitted).  To proceed on a claim challenging the constitutionality of medical care "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment."  *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986); *Estelle*, 429 U.S. at 106 (holding that neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 836 (observing that a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir.

2008) (affirming district court's summary dismissal of inmate complaint because "misdiagnosis and inadequate treatment involve no more than medical negligence."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that misdiagnosis of pituitary tumor sounds in negligence and is not sufficient to show deliberate indifference); *Barr v. Fla. Dept. of Corr.*, 2011 WL 1365552, at *4 (S.D. Fla. April 11, 2011) (finding plaintiff due no relief where misdiagnosis, which led to improper insertion of feeding tube, did not rise to the level of deliberate indifference as misdiagnosis amounted to nothing more than negligence); *Null v. Mangual*, 2012 WL 3764865, at *3–4 (M.D. Fla. Aug. 30, 2012) (finding that misdiagnosis of inmate with Ganglion cyst which "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on his lungs . . . fail[ed] to show that Defendants acted with deliberate indifference as opposed to mere negligence. . . .   At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, 1999 WL 33320439, at *5 (W.D. N.C. July 16, 1999) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved.   Conclusory allegations sounding in malpractice or negligence do not state a federal constitutional claim.") (citing *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986)).

Additionally, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things: aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted) (alterations in original). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Detention Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at

291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)].  Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Rogers*, 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545 (internal quotation marks and citation omitted).  Moreover, the law is clear that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."  *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).  The law is likewise clear that an inmate is not entitled to referral to an outside

physician for evaluation.  *Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference" as the allegation does "not show that defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm."); *Dixon v. Jones*, 2014 WL 6982469, at *9 (M.D. Ala. Dec. 9, 2014) (finding that jail physician's denial of second opinion regarding treatment provided to inmate for physical injuries did not constitute deliberate indifference); *Youmans v. City of New York*, 14 F.Supp. 357, 363–64 (S.D.N.Y. 2014) (noting that "courts in the Second Circuit have held that failure to provide a second opinion is not generally a violation of a prisoner's Eighth Amendment rights."); *Schomo v. City of New York*, 2005 WL 756834, at *10 (S.D.N.Y. Apr. 4, 2005) (finding that doctor's decision to deny inmate a second opinion regarding inmate's physical capabilities did not constitute deliberate indifference "since prisoners are not constitutionally entitled to a second medical opinion.").

    **2.** **Medical Defendants.**  Williams challenges the adequacy of treatment provided to him by medical personnel for his scrotal infection and blood in his stools while at Easterling from September of 2016 until the filing of this complaint in March of 2017.  He also asserts that he should have been referred to an outside physician for evaluation and treatment of the blood in his stools which he believes resulted from a bleeding colon.

The medical defendants adamantly deny they acted with deliberate indifference to Williams' medical needs during the time relevant to this complaint and maintain that Williams had continuous access to health care personnel and received treatment from medical professionals for his complaints during this time. The medical records before the court demonstrate that medical personnel at Easterling evaluated Williams each time he appeared at sick call or a medical appointment with complaints related to the infection on his private part and blood in his stools, assessed his need for treatment, prescribed medications to treat his conditions, ordered tests and studies to assist in treating Williams and provided treatment to Williams in accordance with their professional judgment.

The defendants submitted several affidavits in response to the complaint filed by Williams. After a thorough and exhaustive review of the medical records submitted in this case, the court finds that the details of medical treatment provided to Williams as set forth by the defendants and other medical personnel in their affidavits are corroborated by the objective medical records contemporaneously compiled during the treatment process.

In his affidavit, Dr. Darbouze, the medical director at Easterling during the period of time relevant to the complaint, addresses the allegations of deliberate indifference, in relevant part, as follows:

> I personally saw and evaluated Mr. Williams at the health care unit at the Easterling Correctional Facility. On September 1, 2016, Mr. Williams had a digital rectal exam[.] At that time, Mr. Williams was noted to have no hemorrhoids or masses. However, Mr. Williams was noted to have an enlarged prostate. His Hemmocult test was negative. A Hemmocult test is a simple test that checks for the presence of hidden blood in a patient's stool.

I next saw Mr. Williams on September 9, 2016 [based on his complaint regarding a knot on his right scrotum which the inmate advised appeared on September 4, 2016,  Doc. 13-1 at 22,] and noted a scrotal abscess.  Treatment for the scrotal abscess was prescribed [and this treatment regimen included prescriptions for doxycycline monohydrate and sulfamethoxazole-trimethoprim, antibiotics used to treat infections, and acetaminophen.  Doc. 13-1 at 14]. Mr. Williams was told to come to the health care unit once [a] day for dressing [changes] until the abscess healed.

I followed up with Mr. Williams and saw him again on September 19, 2016.  The scrotal abscess was noted as being healed.

[On November 21, 2016, a Nursing Encounter Tool was prepared by medical personnel noting Williams' complaint of hemorrhoids.  Medical personnel provided Williams Colace and Tums to be taken twice that day and provided him a 28-day supply of topical hemorrhoid cream during this sick call evaluation.  Doc. 13-1 at 21].

I next saw Mr. Williams on November 25, 2016.  Mr. Williams claimed to have "severe hemorrhoids" but declined a rectal exam claiming that his hemorrhoids were not out at that time.  Mr. Williams was written [a 30-day] prescription [for Colace at this time] to treat his hemorrhoids.  [Doc. 13-1 at 11; Doc. 13-1 at 16.]

I next saw Mr. Williams on February 9, 2017.  Mr. Williams claimed to have a trace of blood in [his] stools after bowel movement on an off.  A Hemmocult study was taken of Mr. Williams.  His Hemoglobin and blood cell count was 15.8, normal/high.  Mr. Williams was still found to be suffering from hemorrhoids with [a] trace of blood in his stool.

. . . .

Each time Mr. Williams has sought medical care and/or attention for his medical needs, he has been seen by me as the Medical Director or the nursing staff at the Easterling Correctional Facility.

[Treatment of] Mr. Williams' medical needs [has] never been delayed or denied.

As the medical records reflect, as well as the medication chart, Mr. Williams has been seen regularly in the health care unit [by the medical staff] for his medical needs[.]

Doc. 13-1 at 3–5 (paragraph numbering omitted).  It is clear from the affidavit filed by Dr. Darbouze and the relevant medical records that Dr. Darbouze attributed the blood in Williams' stools to have been caused by his hemorrhoids.  Moreover, the tests run on Williams did not indicate an internal blood loss such as bleeding from the colon and the results of these tests also suggested the blood in his stools resulted from his hemorrhoids. Doc. 44-1 at 4.  In addition, Williams' current attending physician, Dr. Manuel Pouparinas, reviewed the relevant medical records and advises "that Mr. Williams [did not] suffer[] from bleeding from his colon."  Doc. 39-1 at 3.[7]

Under the circumstances of this case, the court finds that the course of treatment undertaken by the medical defendants did not violate Williams' constitutional rights. Specifically, there is no evidence upon which the court could conclude that the defendants acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Harris*, 941 F.2d at 1505 (internal quotation marks and citation omitted).  Rather, the evidence before the court

---

[7]Nurse Wilson and Nurse Payne filed affidavits detailing their lack of personal interaction with Williams and denying any deliberate indifference to his medical needs by medical personnel involved with his treatment.  Doc. 13-2 at 3–4; Doc. 13-3 at 3–4.  With respect to Corizon, Williams is not entitled to relief against this entity based solely on the actions of its employees.  For § 1983 liability to attach to a private corporation providing medical care to inmates, a plaintiff must show that his constitutional rights were violated and that the violation resulted from an established policy or custom of that corporation.  *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997). Williams does not identify or challenge any policy of Corizon but only challenges the treatment provided by medical personnel employed by Corizon. As set forth herein, Williams has not shown either a violation of his constitutional rights or that such violation resulted from a policy enacted by Corizon.  Moreover, liability under § 1983 may not be based on Corizon's role as the employer or supervisor of the doctors or nurses who are providing medical treatment to the plaintiff.  *See e.g., Massey v. Montgomery County Detention Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

demonstrates that medical personnel evaluated Williams each time he reported to the health care unit for treatment of his scrotal abscess and bloody stools, prescribed medication to him in accordance with their professional judgment, and ordered tests to aid in their assessment and treatment of his conditions.  Whether medical personnel "should have [utilized] additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal citation omitted).  Additionally, the mere fact Dr. Darbouze did not refer Williams for a second opinion of his diagnosis does not constitute deliberate indifference.  *Amarir*, 243 F. App'x at 354; *Dixon*, 2014 WL 6982469, at *9.  Furthermore, to the extent the claims for relief sound in negligence or medical malpractice, neither of these constitutes deliberate indifference actionable in a § 1983 case.  *Farmer*, 511 U.S. at 836; *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771.  Additionally, insofar as Williams complains Dr. Darbouze should have pursued a mode of treatment other than that prescribed, this allegation does not "rise beyond negligence to the level of [deliberate indifference]."  *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *Hamm*, 774 F.2d at 1575 (holding that inmate's desire for a different mode of medical treatment fails to establish deliberate indifference).  Finally, even if Dr. Darbouze misdiagnosed the cause of Williams' bloody stools, such does not rise to the level of deliberate indifference.  *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771; *Comstoc*k, 273 F.3d at 703; *Johnson*, 145 F.3d at 168.

As a result, the court concludes that the medical treatment provided to Williams did not constitute a violation of the Eighth Amendment.  Williams' conclusory assertions of inadequate medical treatment do not create a question of fact in the face of contradictory, contemporaneously created medical records.  *Whitehead v, Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) ("Although [Plaintiff] attempts to overcome summary judgment by offering his own sworn statement[s] . . . to support his allegations, the contemporaneous medical records and opinions of the examining medical [professionals] show that this purported evidence is baseless."); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) (where a party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

In sum, based on well-settled law cited herein, neither Williams' desire for a different mode of medical treatment, the lack of a referral to a specialist for treatment, his disagreement with the treatment provided to him by the prison's medical personnel, nor an alleged misdiagnosis constitutes deliberate indifference violative of the Constitution. Moreover, Williams has failed to present any evidence which indicates the medical defendants knew that the treatment proided to him created a substantial risk to his health and with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence showing that defendants Corizon, Darbouze, Wilson or Payne acted with deliberate indifference to Williams' medical needs.  Consequently, summary judgment is due to be granted in favor of the medical defendants on this claim.

**3.  <u>Correctional Defendant</u>.**  Warden Myers avers that Williams had access to treatment from professional medical personnel employed by Corizon while incarcerated in the state prison system and received treatment from the medical staff throughout his incarceration at Easterling.  Doc. 14-1 at 2.  Myers, who is not a medical professional, also asserts that he relied on the professional judgments of the prison system's medical personnel regarding the treatment afforded to Williams and, to his knowledge, these individuals provided all necessary treatment to Williams.  Doc. 14 at 2.

Initially, a defendant who is not a physician cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor[,]" where the defendant had no knowledge or reason to believe the inmate was not receiving treatment.  *Durmer v. O'Carroll, 991,* 991 F.2d 64, 69 (3rd Cir. 1993); *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004) (holding that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official like [defendant] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").  Williams requested that Warden Myers intervene in his treatment because he disagreed with the course of treatment undertaken by Dr. Darbouze.  It is undisputed that Williams was being seen, evaluated and treated by prison medical personnel.  While Williams was not satisfied with the treatment prescribed, the record shows that the challenged treatment was warranted by the symptoms associated with his conditions.  As such, Warden Myers, who is not a physician or health care

professional and lacks formal medical training, did not act with deliberate indifference for failing to interfere with the medical treatment provided to Williams.

Insofar as Williams seeks to hold defendant Myers for the treatment provided by medical professionals, he is likewise entitled to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Based on the foregoing analysis, summary judgment is due to be granted in favor of Warden Myers on Williams' claim that this defendant acted with deliberate indifference to his medical needs.

### C. Retaliation by Warden Myers

Williams alleges that Warden Myers refused to intervene with his medical treatment in retaliation for his filing other lawsuits. Doc. 2 at 2. Myers, an individual with no formal medical training, denies this assertion and avers he was not in any way involved in decisions regarding the medical treatment provided to Williams as these decisions were due to be made solely by healthcare professionals absent interference from an untrained layman. Doc. 14-1 at 2.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)]. As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987). "The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)]. . . . The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). The situation is clearly complicated when the alleged act of retaliation regards the provision of medical treatment as an inmate may attempt to inappropriately influence decisions regarding such treatment "by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied* sub nom *Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging the constitutionality of actions of correctional personnel. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied* sub nom *Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). "[C]ourts must approach prisoner

claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To proceed on a claim of retaliation and withstand the entry of summary judgment, an "inmate must establish . . . three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct . . . was a 'motivating factor'" behind the challenged action of the defendant. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977). Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendant to show that he "would have reached the same decision as to [plaintiff's discipline] even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. "Under the *Mt. Healthy* approach, if the government official 'can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected conduct, [he] cannot be held liable.' *Thaddeus-X*, 175 F.3d at 388 n.4." *Smith*, 532 F.3d at 1278 n.22.

Williams alleges Warden Myers refused to intervene with his medical care in retaliation for his filing previous lawsuits, thus satisfying the first element of his retaliation claim, i.e., his exercise of a protected right. *Smith*, 532 F.3d at 1277. The second element requires Williams to demonstrate that he, in fact, suffered an adverse action — the denial of medical treatment — and this denial "would likely deter a [prisoner] of ordinary

firmness" from filing legal actions challenging the constitutionality of the medical treatment received. *Id*. This "presents an objective standard and a factual inquiry." *Id*. There is nothing before this court which indicates that Myers denied Williams access to medical treatment at any time during his incarceration at Easterling. Instead, the medical records refute this allegation. Moreover, it does not appear to the undersigned that the challenged action would deter an ordinary inmate from filing lawsuits and, in the experience of this court, the opposite is true as inmates routinely file complaints addressing the validity of medical treatment provided to them. For instance, the records of this court establish that Williams was not in any way deterred in this pursuit as he filed this case and a subsequent case, *Williams v. Corizon Helath Care, et al*., 2:17-0CV-366-ALB-SMD (M.D. Ala.), challenging the medical treatment he received at Easterling. Even if this standard has been met, Williams fails to satisfy the third requisite element of a retaliation claim, a causal connection between his constitutionally protected activity and the alleged adverse inaction by Warden Myers.

The causal connection inquiry focuses on the "subjective motivation of the defendant[,]" *Thaddeus-X*, 175 F.3d at 399, and this court will therefore address "whether the defendant[] [was] subjectively motivated to" deny Williams medical treatment for filing prior lawsuits. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mt. Healthy*. This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" — an element the court assumes *arguendo* exists

— and then "the burden of production shifts to the defendant.  If the defendant can show that he would have taken the same action [or lack of action] in the absence of the protected activity, he is entitled to prevail on summary judgment."  *Thaddeus-X*, 175 F.3d at 399, *referencing Mt. Healthy* motive analysis.

Myers denies the allegation of retaliation made by Williams and maintains he did not intervene in the medical treatment provided to Williams because such treatment was due to be undertaken by medical professionals.  Williams offers only his conclusory allegation of ultimate fact that Myers retaliated against him for filing prior lawsuits.  This allegation is insufficient to defeat summary judgment.  *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6.  The record before the court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor as to the alleged act of retaliation.  Additionally, the circumstances, when taken as a whole, do not support making such an inference.  Thus, the retaliation claim likewise falters on this element as Warden Myers has established that his refusal to intervene with medical treatment decisions was not impacted by Williams' filing of lawsuits.  In light of the foregoing, Myers is entitled to summary judgment on the retaliation claim presented by Williams.

### D.  False Information

Williams alleges that his medical files contain information relative to another inmate with the name Ronnie Williams, including this other inmate's status as a mental health inmate.  Doc. 2 at 1.  He asserts that the medical defendants relied on information regarding

this other Ronnie Williams in providing treatment to him for his scrotal infection and blood in his stools.  Doc. 2 at 1.

The medical defendants deny any reliance on false information when providing treatment to Williams for the medical conditions referenced in the instant complaint.  Doc. 39-1 a 3.  Moreover, the court has thoroughly reviewed the medical records filed in this case and these records establish that health care personnel provided treatment to Williams for his scrotal infection and bloody stools based on his specific complaints to them regarding these issues.  The medical records are therefore devoid of evidence that there was any reliance on information related to another inmate when providing the treatment made the basis of the instant complaint.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution.  The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole.  *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.  Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information.  We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous

information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id.* In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.2d at 1442. *Slocum* controls the disposition of the false information claim now before the court.

The medical defendants maintain that the relevant information in Williams' medical records on which they relied to provide medical treatment to him for his scrotal infection and bloody stools is true and that reliance on this information did not infringe on any of Williams' constitutional rights. Of specific importance, there is no admission by the medical defendants that the information actually utilized in the challenged treatment process was false, incorrect or erroneous. Williams has failed to come forward with any evidence which indicates that the medical defendants knowingly relied on false, erroneous or incorrect information when providing treatment to him for the conditions at issue. Moreover, Williams' conclusory allegation regarding the potential use of false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001) (holding that "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record before the court establishes that the medical defendants did not rely on admittedly false information in providing medical treatment to Williams for a scrotal infection or blood in his stools.  Consequently, Williams is entitled to no relief as a matter of law and entry of summary judgment in favor of the medial defendants is therefore appropriate.

### E.  Equal Protection

Williams makes a purely conclusory allegation that he "do[es] have rights to Equal Protection of Law."  Doc. 2 at 1.  This claim provides Williams no basis for relief because merely alleging a violation of equal protection fails to state a claim on which relief may be granted.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not bepressed. . . .  The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'"  *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D.Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.

*Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-19 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Williams fails to identify any similarly situated inmate who received differential favorable treatment. Thus, Williams' "equal protection claim necessarily fails first because he has not [asserted] that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319. This claim likewise provides no basis for relief

> because [Williams] has not alleged . . . that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest. He has not even claimed that he was treated differently from others because of race, religion, or national origin. *See Snowden v.*

*Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration . . . of a state statute fair on its face, resulting in its     unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require *identical* treatment.  There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises:  it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results."  (internal quotation marks omitted)); *see also Cruz v. Skelton*, 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original).  The record before the court contains no evidence of any discrimination in the provision of medical treatment to Williams.  Consequently, the conclusory allegation of an equal protection violation entitles Williams to no relief in this cause of action.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The defendants' motions for summary judgment be GRANTED.

2.      Judgment be GRANTED in favor of the defendants.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against the plaintiff.

On or before **January 27, 2020** the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal

conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993)("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 13th day of January, 2020.


_____
     /s/ Charles S. Coody
UNITED STATES MAGISTRATE JUDGE